[No. C031490. Third Dist. May 4, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAWN REGAN SEWELL, Defendant and Appellant.

COUNSEL

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Jane N. Kirkland, Deputy Attorneys General for Plaintiff and Respondent.

OPINION

DAVIS, J.—A jury convicted defendant Shawn Regan Sewell of second degree felony murder (in the commission of the inherently dangerous felony of evading a pursuing peace officer while driving in willful or wanton disregard for safety); the jury also convicted defendant of causing death while evading a peace officer and evading a peace officer. (Pen. Code, § 187; Veh. Code, §§ 2800.2, 2800.3, 2800.1; all further references to sections are to the Vehicle Code unless otherwise indicated.)

Placed on five-year probation with a jail term, defendant appeals. His sole contention is that his second degree felony-murder conviction must be reversed because the underlying felony—driving in willful or wanton disregard for the safety of persons or property while evading a pursuing peace officer (§ 2800.2)—is not an inherently dangerous felony. We disagree and

affirm the murder conviction. We will, however, strike defendant's conviction for evading a peace officer.

In light of defendant's contention on appeal, it is unnecessary to detail the facts. Suffice it to say, defendant led a pursuing police officer on a wild, high-speed chase that encompassed several moving violations and that culminated in the crash of defendant's car and the death of defendant's passenger.

## DISCUSSION

### A. *Second Degree Felony Murder*

For his passenger's death, defendant was convicted under the theory of second degree felony murder committed in the perpetration of a felony inherently dangerous to human life—section 2800.2.

Under the second degree felony-murder doctrine, a homicide is second degree murder if it is committed in the perpetration or attempted perpetration of any felony that is inherently dangerous to human life. (*People v. Hansen* (1994) 9 Cal.4th 300, 308 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (*Hansen*); *People v. James* (1998) 62 Cal.App.4th 244, 258 [74 Cal.Rptr.2d 7] (*James*).)

In determining whether a felony is inherently dangerous, a court looks to the elements of the felony in the abstract, and not to the defendant's specific conduct. (*Hansen, supra,* 9 Cal.4th at p. 309; *James, supra,* 62 Cal.App.4th at p. 258.) A felony is inherently dangerous if "by its very nature, it cannot be committed without creating a substantial risk that someone will be killed . . . ." (*People v. Burroughs* (1984) 35 Cal.3d 824, 833 [201 Cal.Rptr. 319, 678 P.2d 894]; see also *Hansen, supra,* at p. 309; *People v. Patterson* (1989) 49 Cal.3d 615, 627, 640-641 [262 Cal.Rptr. 195, 778 P.2d 549] [an "inherently dangerous felony" for purposes of the second degree felony-murder doctrine "is an offense carrying 'a high probability' that death will result"]; *James, supra,* at p. 259 [noting that the high court in *Hansen* "reaffirmed both [the *Burroughs* and the *Patterson*] definitions, treating them as if they were equivalent and interchangeable"].)

In *People v. Johnson* (1993) 15 Cal.App.4th 169 [18 Cal.Rptr.2d 650] (*Johnson*), the court concluded that section 2800.2 is an inherently dangerous felony for second degree felony-murder purposes. (15 Cal.App.4th at pp. 173-174.) Section 2800.2 read at the time of *Johnson*: "If a person flees or attempts to elude a pursuing peace officer in violation of Section

2800.1 [intention to evade peace officer in motor vehicle or on bicycle] and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, by imprisonment in the county jail for not more than one year, or by a fine of not less than one hundred seventy dollars ($170) nor more than two thousand dollars ($2,000), or by both that fine and imprisonment." (Stats. 1988, ch. 504, § 3, p. 1919.)

In determining that section 2800.2 constituted an inherently dangerous felony, *Johnson* reasoned: "It would seem clear as a matter of logic that any felony whose key element is 'wanton disregard' for human life necessarily falls within the scope of 'inherently dangerous' felonies." (*Johnson, supra,* 15 Cal.App.4th at p. 173.)

Defendant acknowledges *Johnson*, but claims it does not govern here because section 2800.2 was materially amended in 1996 after *Johnson* was decided.

The 1996 amendment to section 2800.2 designated the text quoted above as subdivision (a), and increased the minimum and maximum fines from $170 and $2,000 to $1,000 and $10,000, respectively. (Stats. 1996, ch. 420, § 1.) The 1996 amendment also added a subdivision (b) to section 2800.2, which provides: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur [basically, moving violations], or damage to property occurs."[1]

Defendant argues in effect that subdivision (b) has made the "willful or wanton disregard" standard in section 2800.2 less serious in the abstract, and therefore section 2800.2 is no longer an inherently dangerous felony. We disagree.

The 1996 amendment did not change the elements of the section 2800.2 offense, in the abstract, or its inherently dangerous nature. The amendment

---

[1]As amended, section 2800.2 now reads: "(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

"(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."

merely described a couple of nonexclusive acts that constitute driving with willful or wanton disregard for the safety of persons or property. The key elements of the crime remain: the offense is committed by one who, "while fleeing or attempting to elude a pursuing peace officer," drives his pursued vehicle in "a willful or wanton disregard for the safety of persons or property." (See *Johnson, supra,* 15 Cal.App.4th at p. 173; see also CALJIC No. 12.85 (1999 rev.) [given here].) Thus, the logic of *Johnson* remains.

The legislative history of the 1996 amendment, which we judicially notice pursuant to the Attorney General's request, supports this view. (Evid. Code, §§ 452, 459.) That legislative history shows an attempt to increase the fines and lengthen the sentences for section 2800.2 behavior. (Assem. Com. on Public Safety, com. on Assem. Bill No. 1999 (1999-2000 Reg. Sess.) Mar. 12, 1996, p. 1.) The thought was that existing law provided an insufficient deterrent to those who willfully flee a peace officer while operating a motor vehicle. (*Ibid.*) Against this backdrop, it would be ironic for us to construe the 1996 amendment as meaning that section 2800.2 is no longer an inherently dangerous felony, thus weakening the deterrent effect provided by the second degree felony-murder doctrine. The Legislature, in 1996, was presumably aware of the 1993 *Johnson* decision; there is no indication the Legislature, in amending section 2800.2 in 1996, sought to counteract that decision in any way. (See *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [Legislature is presumed to be aware of judicial decisions].)

Defendant argues that under the 1996 amendment to section 2800.2, a pursued driver whose license was suspended, who passed safely to the right but went onto the shoulder, and who made a rolling stop, could be convicted under section 2800.2 for three traffic "point" violations; yet, defendant asserts, this course of conduct does not carry a "substantial risk" or a "high probability" of death.

A similar argument was rejected in *People v. Morse* (1992) 2 Cal.App.4th 620 [3 Cal.Rptr.2d 343] (*Morse*). There, the question was whether reckless or malicious possession of an explosive device (Pen. Code, § 12303.2) is an inherently dangerous felony. In answering this question yes, *Morse* stated: "Appellant argues that because there are '*conceivable* [] ways of violating the statute that do not necessarily pose a threat to human life' the crime is not inherently dangerous. . . . [¶] We must view the *elements* of the offense, not the particular *facts* of the instant offense. In viewing the elements our task is not to determine if it is *possible* (i.e., 'conceivable') to violate the statute without great danger. By such a test no statute would be inherently

dangerous. Rather the question is: does a violation of the statute involve a *high probability* of death? (*People* v. *Patterson, supra,* 49 Cal.3d 615, 617.) If it does, the offense is inherently dangerous." (*Morse, supra,* 2 Cal.App.4th at p. 646; see also *James, supra,* 62 Cal.App.4th at pp. 269-270 [*James* concluded that the offense of manufacturing methamphetamine is an inherently dangerous offense for purposes of the second degree felony-murder doctrine; in reaching this conclusion, *James* quoted this passage from *Morse* to dispense with an argument that "a skilled person can manufacture methamphetamine 'relatively' safely"].)

Defendant also argues that the 1996 amendment to section 2800.2 "permits property damage to stand in for willful or wanton behavior." "Once again," defendant asserts, "one can damage property without risking life . . . ."

A similar argument was rejected in *Johnson, supra,* 15 Cal.App.4th 169. The court there stated:

"Counsel for Johnson, however, relies upon the statute's terms which encompass 'disregard for the safety of persons *or property*.' His argument is *that disregard for property may not constitute an 'inherently dangerous'* felony. While the point has a superficial plausibility, we cannot agree.

"To begin with, giving the statutory language involving 'wanton disregard' for the safety of 'persons or property' a commonsense construction, it appears the 'wanton disregard' in question is total, rather than selective. That is, the disregard is for everything, whether living or inanimate.

"As the Attorney General also points out, apart from the 'wanton disregard' element, one must also be engaged in the act of fleeing from a pursuing peace officer whose vehicle is displaying lights and sirens. Any high-speed pursuit is inherently dangerous to the lives of the pursuing police officers. In even the most ethereal of abstractions, it is not possible to imagine that the 'wanton disregard' of the person fleeing does not encompass disregard for the safety of the pursuing officers. In short, it does not appear that the phrase 'or property' may properly be construed to limit the mental state of the offender, and thus to make fleeing a pursuing police vehicle other than 'inherently dangerous.' " (15 Cal.App.4th at p. 174.)

As noted, the key elements of section 2800.2 for inherently dangerous purposes are still intact, notwithstanding the 1996 amendment: a person must be fleeing or attempting to elude a pursuing peace officer while driving

his pursued vehicle with a willful or wanton disregard for the safety of persons or property. A willful or wanton disregard for the safety of persons or property—which may be shown, among other ways, by three or more traffic "point" violations or by the occurrence of property damage, if done during "driving while fleeing or attempting to elude a pursuing peace officer"—still constitutes an inherently dangerous felony for second degree felony-murder purposes. (§ 2800.2, subd. (b).)

B. *Evading a Peace Officer*

The jury convicted defendant of second degree murder, and two "lesser related offenses" thereto: evading a peace officer causing serious bodily injury or death (§ 2800.3); and evading a peace officer (§ 2800.1). The court stayed sentence for the two evasion convictions. (Pen. Code, § 654.)

■ "It is the settled law of California that convictions may be had for more than one offense committed by means of a single act or series of acts, where there is an element of one crime not found in the other and where in a prosecution for either one of the offenses there could not have been a conviction of the other. [Citations.]" (*People v. Thomas* (1943) 59 Cal.App.2d 585, 587 [139 P.2d 359]; *Orlina v. Superior Court* (1999) 73 Cal.App.4th 258, 262 [86 Cal.Rptr.2d 384].) "As a general rule, a single act which violates more than one statute gives rise to separate offenses. The prosecution may charge any or all of them, in one or more accusatory pleadings; and a prior acquittal or jeopardy on one of the offenses does not bar a subsequent prosecution for another, unless the latter bears so close a relation as to be regarded as an *included* offense." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 120, p. 140.) "[M]ultiple convictions may *not* be based on necessarily included offenses." (*People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595]; *People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48]; see Pen. Code, §§ 654, 954.)

■ Under these principles, defendant's conviction for evading a peace officer, a necessarily included offense of evading a peace officer causing serious bodily injury or death, must be stricken. (*People v. Ortega, supra,* 19 Cal.4th at p. 692 [" ' ". . . where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense" ' "].) ■ The convictions for second degree murder and evading a peace officer causing serious bodily injury or death can stand together. The trial court properly stayed sentence under Penal Code section 654 on the conviction for evading a peace officer causing serious bodily injury or death.

## DISPOSITION

Defendant's conviction for evading a peace officer (§ 2800.1) is stricken. The trial court is directed to amend its official records (the probation form and the disposition of arrest and court action form) to indicate that this conviction has been stricken. In all other respects, the judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied May 31, 2000, and appellant's petition for review by the Supreme Court was denied August 23, 2000.